# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID FLYNN,<br><br>        Plaintiff,<br><br>    v.<br><br>CANLAS, et al.,<br><br>        Defendants. | Case No. 1:16-cv-01052-AWI-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>ECF No. 52<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.    Background**

Plaintiff David Flynn ("Plaintiff") is a former state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff was a prisoner at the time this action was initiated. This action proceeds against Defendant Maddox for deliberate indifference to serious medical needs in violation of the Eighth Amendment and for falsification of medical appeals responses.

On September 14, 2018, Defendants Maddox filed a motion for summary judgment on the grounds that Defendant is entitled to judgment as a matter of law because there are no genuine issues of material fact, and Defendant is entitled to qualified immunity.[1] On October 9, 2018, Plaintiff filed his opposition to Defendant's motion for summary judgment. (ECF No. 54.)

---
[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 52-2.)

1

Defendant filed a reply on October 15, 2018. (ECF No. 55.) Defendant also filed objections to Plaintiff's evidence in opposition to the motion for summary judgment. (ECF No. 56.) The motion is deemed submitted. Local Rule 230(l).

**II.     Legal Standard**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Id. (citing Celotex, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id. at 929; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its

opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987). Further, the Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III. Discussion

Plaintiff's claim against Defendant Maddox alleges that Defendant Maddox failed to adequately or timely address Plaintiff's dermatological needs on December 9, 2013, and that she falsified documents related to Plaintiff's inmate appeal.[2] (ECF No. 1 at 4-7.)

---

[2] Plaintiff alleges that Defendant Maddox falsified documents in his Health Care appeal, by signing and dating the appeal that an interview took place. She recorded that "no inmate response" was made, but Plaintiff had requested an interview and documents. (ECF No. 1 at 7.) In multiple appeals, he was not interviewed, and the appeal said that he was.

3

**A. Undisputed Material Facts[3]**

1. Nurse Maddox has been a Registered Nurse for 35 years. (ECF No. 52-2; Defendants' Separate Statement of Undisputed (SSUF) 1.)
2. Nurse Maddox worked as a Registered Nurse at Valley State Prison from 2006 to 2017. (SSUF 2.)
3. At all relevant times, Plaintiff was an inmate at Valley State Prison. (SSUF 3.)
4. On December 9, 2013, Nurse Maddox saw plaintiff due to his complaints of vision issues and a history of actinic keratosis. (SSUF 4.)
5. Plaintiff had red areas around the side of Plaintiff's left eye, which were not bleeding.
6. Nurse Maddox believed the spots were sun damage to Plaintiff's face.
7. Nurse Maddox intended to refer Plaintiff to a dermatologist, but believed Plaintiff would be paroling soon.[4]
8. Nurse Maddox told Plaintiff to come back in January or February.
9. The typical delay in obtaining a consultation with a specialist was approximately 90 days. (SSUF 8.)
10. Nurse Maddox did not believe the sun damage to Plaintiff's face constituted a medical emergency.
11. On April 14, 2014, Plaintiff submitted a Health Care Services Request Form (CDC 7362) in which he was "requesting dermatologist check area's [sic] of my face." (SSUF 10.)

---

[3] These facts are taken from a combination of Defendant's Statement of Undisputed Material Facts (Doc. 52-3), Plaintiff's statement of undisputed facts in opposition to motion for summary judgment (ECF No. 54 p.9), Plaintiff's verified complaint, and Plaintiff's unverified opposition to Defendant's summary judgment motion. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified pleadings and motions may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement.

[4] Plaintiff argues that he never told Defendant Maddox that he was paroling and argues the November 13, 2013 Health Care Request form shows that he had follow up appointment scheduled for 4/8/14. (See Doc. 54 Exh. C, p. 18.) Plaintiff states that this Health Care Request form shows that Nurse Maddox was aware Plaintiff was not paroling soon. This form does not raise a material issue of fact. There is no evidence before the Court that the November 13, 2013 Health Care Request form was prepared by Defendant Maddox or that she saw the November 13, 2013 Health Care Request form. The dispute as to whether Plaintiff told Defendant Maddox that he would be paroling soon is addressed *infra*.

4

12. Nurse Maddox saw Plaintiff again on May 8, 2014. (SSUF 11.)

13. She performed another physical examination and noted that the texture of the red area had changed since the December 2013 visit. (SSUF 12.)

14. Nurse Maddox referred Plaintiff for a dermatology consultation on May 8, 2014. (SSUF 13.)

15. Nurse Maddox saw Plaintiff again on June 27, 2014 as a result of his request to renew three chronos: (1) lower bunk, (2) a straw hat, and (3) lifting restrictions due to an old left shoulder injury. (SSUF 14.)

16. Nurse Maddox approved all three renewals at that visit. (SSUF 15.)

17. Plaintiff alleges that Nurse Maddox "falsified" documents related to his medical appeals, but that alleged conduct did not cause him any physical harm. (SSUF 16.)

18. It only caused him to be angry. (SSUF 17.)

**B. Defendant's Evidentiary Objections**

Defendant objected to Plaintiff's Exh. E, J, K, L, and M. (See ECF No. 56, objecting to Exh. in ECF No. 54.) Exhibits J, K, L, and M are other inmates' declarations discussing their contact and treatment with Defendant Maddox and opining on her conduct, in unrelated incidents. Exhibit E is a purported record showing when Plaintiff would be paroled.

The Court has relied only on evidence it considered to be admissible, considering the evidence in the light most favorable to the Plaintiff. The Court will not rule on evidentiary matters individually in the context of this summary judgment.

**C. Deliberate Indifference to Serious Medical Needs**

1. Standard for Deliberate Indifference to Serious Medical Needs

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure

to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (citation omitted).

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985. Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment or by the way in which medical care is provided. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). "Deliberate indifference is a high legal standard," Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096. "Mere delay of medical treatment, without more, is insufficient to state a claim of deliberate medical indifference." Robinson v. Catlett, 725 F.Supp.2d 1203, 1208 (S.D. Cal. July 19, 2012) (quoting Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985)). To state a claim for deliberate indifference arising from a delay in treatment, a prisoner must allege that the delay was harmful, although an allegation of substantial harm is not required. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1991), overruled on other grounds by, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06).) "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. Cty. of Kern, 45 F.3d 1310,

1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987.  "To show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." Id.

### 2. Serious Medical Need

Plaintiff has submitted evidence that he had a serious medical need. "Examples of serious medical needs include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (alteration in original) (citation and internal quotation marks omitted). Here, Plaintiff has stated, under penalty of perjury, that he saw Defendant Maddox with concerns about cancerous spots on his face.

### 3. Scope of Examination on December 9, 2013 was not Deliberate Indifference

Plaintiff has failed to raise a disputed issue of material fact Defendant Maddox was aware of a substantial risk of serious harm and that she drew that inference at the December 9, 2013 medical appointment.  The undisputed evidence is that Defendant Maddox believed the red areas around Plaintiff's left eye were damage from sun exposure and were not cancerous.  While there is evidence that Plaintiff told Maddox that the red spots around his eye were cancer, there is no evidence that Maddox believed or knew the spots were cancerous.  In fact, according to Plaintiff, Defendant Maddox exclaimed "that don't look like cancer to me" in response to Plaintiff telling her it was cancer.  (Complaint, ECF No. 1 p.4.) Whether a prison official was deliberately indifferent is subjective. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). On December 9, 2013, the red

areas spots were not bleeding, Maddox told Plaintiff that she did not believe the spots were cancer, and the Progress Note describes them merely as "red areas." (ECF No. 54 p.20 of 21.) Plaintiff does not dispute the size of the red areas, which the Progress Note records as 3-4 mm.

The scope of Defendant Maddox's examination on December 9, 2013 does not raise a material issue of fact. The parties dispute whether Defendant Maddox did a "physical examination" at the December 9, 2013 medical visit. Plaintiff complains that Defendant did not examine him because Maddox did not get out of her seat, and she looked at him from 6 feet away. (Complaint, ECF No. 1 p.4-5.) On the other hand, Maddox says she did a "physical examination" of the red areas. The scope of examination on December 9, 2013 does not raise a material issue of fact. It is undisputed that Maddox visually saw the red areas, recorded the color and size on the Progress Note (ECF No. 54, Exh. D p. 20), and opined that the areas were "not cancerous." (See ECF No. 1 p.4.)

4. <u>Deliberate Indifference for Delaying Referring Plaintiff for 1-2 months</u>

Plaintiff's main claim is that Defendant Maddox should have referred him to a specialist on December 9, 2013 and not have him come back in 1-2 months in January-February 2014. (ECF No. 54 Exh. D p.20 ("next yr Jan Feb if not parole for f-up").) Plaintiff saw Defendant Maddox on December 9, 2013, wherein he alleges she did not refer him to a specialist and told him to come back in 1-2 months. The parties dispute whether an upcoming parole date was the reason for the 1-2-month delay.[5] Whether a parole date was mentioned or not, does not raise a material issue of fact because it is undisputed that Defendant Maddox did not refer Plaintiff to a specialist following the December 9, 2013 medical visit with Defendant Maddox, regardless of the reasons for delay.

Plaintiff does not present evidence that delay of 1-2 months to return to medical as suggested by Defendant Maddox caused Plaintiff any harm. Plaintiff did not return in January or February, as suggested by Maddox, but waited until April 2014 to request to return to medical.

---

[5] Plaintiff says he never told Defendant Maddox that he would be paroling soon. Plaintiff's complaint says that Maddox told him to come back after the holidays "she does not have time to look at his files." (ECF NO. 1, p. 4.)

8

(SSUF 10, ECF No. 52-5, p.7; Complaint, ECF No. 1 p.4 ("Plaintiff waited for a follow up appointment until April 2014.").) In his April 13, 2014, Health Care Request form, Plaintiff requested that a dermatologist check areas of his face, close to the left eye because he was treated for cancer in 2012. (ECF No. 1 Exh. E ("requesting dermatologist check areas's [sic] of my face. I was treated for face cancer in 2012 (March) at Donavan Prison San Diego. Areas on face have red marks and are close to left eye.") This April 13, 2014 request form does not say that the area around his eye was bleeding, or changed, or state any other damage.[6] He was seen again by Defendant Maddox on May 8, 2014. (ECF No. 52-5 Exh. C.) At that time, on May 8, 2014, Plaintiff told Maddox that he was bleeding from the cancerous areas. (ECF No. 1, p. 5-6.) It is undisputed that when Plaintiff returned to see Defendant Maddox on May 8, 2014, Defendant Maddox performed another physical examination and noted that the texture of the red area had changed since the December 9, 2013 visit. (SSUF 12.) She then referred Plaintiff on May 8, 2014 to a dermatologist for consultation. (SSUF 13.) Plaintiff does not present evidence that the conditioned worsened or that other harm occurred during the time period that Defendant Maddox told him to return to medical, 1-2 months later in January-February 2014. There is no medical evidence that the delay of 1-2 months from December 9, 2013, until January-February 2014, caused additional harm. There is no medical evidence before the Court on which a reasonable inference can be made that harm resulted from the delay to January-February 2014. Indeed, Plaintiff did not seek a follow up after his December 9, 2013 appointment with Defendant Maddox until April 2014. The only reasonable inference from the evidence before the Court is that the red areas were not changing.

Following Defendant Maddox's referral of Plaintiff on May 8, 2014, Plaintiff was seen via TeleMed by P. Haines Ely, M.D. on July 29, 2014. (ECF 54 Exh. I p.30.) Dr. P. Haines Ely stated after examination that spots on his left nose, left outer canthus, and scalp were cancerous. (ECF No. 54 Exh. I p.30.) Dr. Ely assessed a treatment plan that Plaintiff needed "Mohs surgery for the tumors of his left outer canthus and nose. His scalp could probably be done at the same

---

[6] Plaintiff also filed an inmate Health Care Appeal on May 6, 2014, (ECF No. 1 Exh. F), but the Appeal does not say that his red spots are bleeding, changed, or any other harm resulting from not seeing a dermatologist specialist earlier.

9

time. I think this is an urgent matter since these tumors have been enlarging and bleeding since at least 2012." (ECF No. 54 Exh. I p.31.)

The Court finds that Dr. Ely's report does not raise a material issue of fact that Plaintiff's condition worsened during the 1-2-month delay in January-February 2014. On examination, Plaintiff did not complain of any bleeding to Dr. Ely and Dr. Ely did not record bleeding under "Review of [Plaintiff's] Systems." Indeed, Plaintiff denied any bleeding from the red spots. (ECF No. 54 Exh. I p.30.) On physical examination of Plaintiff, Dr. Ely did not find any bleeding and no bleeding from the red areas was noted. Id. Thus, this report does not establish any worsening of Plaintiff's condition during the two months from December 2013 to January-February 2014.

Moreover, Plaintiff cannot establish harm from the delay of 1-2 months after seeing Defendant Maddox in December 2013 because the delay would have occurred in any event. It is undisputed that even had Defendant Maddox referred Plaintiff to a specialist on December 9, 2013, the specialist appointment would not have been set for at least 90 days. (SSUF 8.) In other words, to get a specialist appointment, it would have taken 90 days from December 9, 2013. Thus, the undisputed evidence is that Plaintiff would not have seen a dermatologist until April or May 2014.

Further, Maddox's failure to identify the spots as cancerous on December 9, 2013 is not deliberate indifference. A difference of opinion between a medical practitioner and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980). Plaintiff submits evidence that defendant Maddox was not qualified to state a medical opinion on dermatological issues. (ECF No. 54 Exh. H "Defendant does not identify herself as a specialist in dermatology and/or skin cancer.") But even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d at 1334.

Plaintiff has failed to raise a disputed issue of material fact Defendant Maddox was aware of a substantial risk of serious harm and that she drew that inference at the December 9, 2013

medical appointment. The undisputed evidence is that Defendant Maddox believed the red areas around Plaintiff's left eye were damage from sun exposure and were not cancerous. Plaintiff does not present evidence that delay of 1-2 months in returning to medical caused Plaintiff any harm. Dr. Ely's report does not raise a material issue of fact that Plaintiff's condition worsened during the 1-2-month delay in January-February 2014. Plaintiff cannot establish harm from the delay of 1-2 months after seeing Defendant Maddox in December 2013 because the delay would have occurred in any event. Accordingly, the motion should be granted as to Plaintiff's claim for deliberate indifference to medical care.

**D. Falsification of Medical Appeals**

Plaintiff claims that Defendant Maddox falsified documents related to his medical appeals.

Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of inmate appeals. The existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted), cert. denied, 541 U.S. 1063 (2004).

In an analogous context, the issuance of a false charge does not, in and of itself, support a claim under section 1983. See, e.g., Ellis v. Foulk, No. 14-cv-0802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirements as set forth in Wolff v. McDonnell.' ") (citing Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) ); Solomon v. Meyer, No. 11-cv-02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges.") (citing Chavira v. Rankin, No. C 11-5730 CW (PR), 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012) ("The Constitution demands due process, not error-free decision-making.")); Johnson v. Felker, No. 1:12-cv-02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a

1  [rules violation] report does not give rise to a claim under section 1983.") (citing Sprouse v.
Babcock, 870 F.2d 450, 452 (8th Cir. 1989) and Freeman v. Rideout, 808 F.2d 949, 951-53 (2d.
Cir. 1986) ); Canovas v. California Dept. of Corrections, No. 2:14-cv-2004 KJN P, 2014 WL
5699750, at *2 n.2 (E.D. Cal. Oct. 30, 2014).

Plaintiff has not presented any evidence that the "false" information caused him harm. There is no evidence that the false information was made in knowing disregard of Plaintiff's serious medical need. It is undisputed that that the only harm caused to Plaintiff by the false information was that it caused him to be angry. (SSUF 17.) Merely alleging that Defendant Maddox filed an incorrect appeal response to his medical appeal is sufficient for a reasonable jury to find in Plaintiff's behalf. Accordingly, Plaintiff fails to state a constitutional claim based on his claim that Defendant Maddox falsified information in medical appeals.

**E. Qualified Immunity**

Defendant argues even if she committed constitutional violations, she is entitled to qualified immunity. The defense of qualified immunity protects "government officials...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether the right was clearly established, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 236 (2009); Saucier v. Katz, 533 U.S. 194, 201 (2001). The evidence must be viewed in the light most favorable to the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1866 (2014).

Because this Court finds Defendant Maddox is entitled to summary judgment on the merits of the Eighth Amendment claim, there is no reason to reach the qualified immunity issue in this case. Thus, this is not a case where qualified immunity need be determined.

**IV.    Conclusion and Recommendation**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment, (ECF No. 52), be GRANTED,

12

    2. Judgment be entered in favor of Defendant and against Plaintiff,

    3. The Clerk be instructed to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991) ).

IT IS SO ORDERED.

    Dated: **September 6, 2019**           /s/ *Barbara A. McAuliffe*
                                                        UNITED STATES MAGISTRATE JUDGE